UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

ERIC PRINCE JOHNSON GIBSON,

Petitioner,

-against-

KENNETH GENALO, *et al.*.

Respondents.

---------------------------------------------------------X

26-CV-6646 (VSB)

**OPINION & ORDER**

Appearances:

Diana Yanguas Rosen
Elyssa Williams
The Legal Aid Society
New York, NY
*Counsel for Petitioner*

Tudor M Neagu
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

Before me is the amended petition of Eric Prince Johnson Gibson ("Petitioner" or "Gibson") for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 20 ("Amended Petition" or "Am. Pet.").) For the reasons that follow below, the petition is GRANTED and the Government is ordered to release petitioner from custody.

## I. **Factual Background and Procedural History**

Gibson is a fifty-two-year-old Liberian citizen who has been living in the United States since 2003. (Am. Pet. ¶¶ 1, 18.) Petitioner was admitted lawfully to the United States in 2003 as a refugee. (*Id.* ¶¶ 1, 18, 51.) Petitioner's mother is an American citizen, and he is her primary

caretaker. (*Id.* ¶¶ 18, 53, 62.) Petitioner was arrested and convicted of multiple crimes in Minnesota between 2009 and 2016, including two burglaries. (*Id.* ¶ 19.) On August 2, 2016, Gibson was detained by Immigration and Customs Enforcement Agency ("ICE") for approximately one month and placed into removal proceedings based on his criminal convictions in Minnesota. ICE purported to detain Petitioner under 8 U.S.C. § 1226(c)(1)(A) in 2016, which provided for mandatory detention for Petitioner because he had been convicted of two or more crimes involving moral turpitude ("CIMT"). (*Id.* ¶¶ 20, 25.)

Gibson filed an application for a waiver of inadmissibility and an application for permanent residence at that time. (*Id.* ¶ 21.) "[N]oncitizens admitted as refugees are eligible to adjust status to permanent residence after one year of physical presence in the United States as long as their refugee status has not been terminated and they are deemed admissible." (*Id.* ¶ 22.) Furthermore, "[r]efugees who are inadmissible under certain provisions of the INA can seek a waiver of inadmissibility." (*Id.*) United States Citizenship and Immigration Services, ("USCIS") granted Petitioner's waiver of inadmissibility on August 30, 2016. (*Id.* ¶ 23.) On September 1, 2016, Gibson appeared for an immigration hearing, at which the Department of Homeland Security ("DHS") informed the immigration judge that Petitioner's waiver had been granted and that Gibson's removal proceedings would be terminated. (*Id.* ¶ 24.) Petitioner was released from ICE custody on September 2, 2016. (*Id.* ¶ 25.)

"Mr. Gibson submitted the required medical exam, fingerprints, and passport photographs for his permanent residence application on October 18, 2016." (*Id.* ¶ 27.) On March 17, 2017, Petitioner's domestic violence charge was dismissed, and he pled guilty to property damage, with the offense date for the conduct—March 13, 2016—predating his waiver of inadmissibility granted on August 30, 2016. (*Id.* ¶ 28.) In 2020, Gibson moved from

Minnesota to New York to live with and care for his U.S. citizen mother, and obtained employment as a cook at a church shelter. (*Id.* ¶¶ 3, 29.) In 2021, Petitioner submitted a second application for permanent residency. (*Id.* ¶ 31.) Petitioner's application for a permanent resident was never adjudicated. (*Id.*)

In 2025, Petitioner was arrested twice by the New York Police Department on misdemeanor charges of trying to obtain transportation services without paying and disorderly conduct, but the charges were dismissed and sealed. (*Id.* ¶ 33.) An immigration detainer was served on Petitioner while he was detained. (*Id.* ¶ 34.) The removal proceedings were scheduled for September 3, 2025, but then adjourned sine die. (*Id.* ¶¶ 35–36.) Petitioner was detained on August 3, 2026 by immigration officials when he voluntarily reported to ICE's offices at 26 Federal Plaza instructing him to report for a check-in. (*Id.* ¶¶ 4, 37–38.) Gibson was being detained at 26 Federal Plaza at the time this habeas action was filed, and so venue is proper. (*Id.* ¶¶ 9–10.) Petitioner is currently being detained at Elizabeth Contract Detention facility in Elizabeth, New Jersey, (*id.* ¶ 6), consistent with my order to show cause, (Doc. 4).

Gibson filed his initial petition for writ of habeas corpus pursuant to pursuant to 28 U.S.C. § 2241 on August 3, 2026, (Doc. 1 ("Petition")), and on August 4, 2026, when the case was assigned to me, I entered an order to show cause why habeas should not issue, enjoining transfer of Petitioner outside of the Southern District of New York, Eastern District of New York, or the District of New Jersey, and set an initial telephonic conference for August 6, 2026, and an order to show cause hearing for August 24, 2026. (Doc. 4.) On August 11, 2026, the Government filed its response to the petition, (Doc. 7), accompanied by a declaration from deportation officer Kyrius Dookharan, (Doc. 8), and a memorandum of law in opposition to the petition, (Doc. 9). On August 18, 2026, I issued an order adjourning the order to show cause

hearing to allow Petitioner time to obtain counsel, as his next friend had indicated she intended to do so during the telephonic status conference. (Doc. 10.)

On August 27, 2026, two attorneys from the Legal Aid Society appeared on behalf of the Petitioner, (Docs. 15–16), and requested an extension of time to file an amended petition, (Doc. 17), which I so-ordered on the same date, (Doc. 18). On September 9, 2026, the Amended Petition, the operative petition in this matter, was filed. (Am. Pet.) Petitioner attached six exhibits: an affidavit from Sunny Jo, a staff attorney at the Legal Aid Society, (Doc. 20-1); an I-485 application form filled out by Petitioner on August 3, 2016, (Doc. 20-2); an I-602 application form filled out by Petitioner on August 3, 2016, (Doc. 20-3); a Minnesota online criminal records form, (Doc. 20-4); a certification from April 2025 that one of Petitioner's misdemeanors in Richmond Criminal Court was dismissed, (Doc. 20-5); and a certification from July 2025 that the other of Petitioner's misdemeanors in Richmond Criminal Court was dismissed, (Doc. 20-6).

On September 16, 2026, the Government filed its memorandum of law in opposition, (Doc. 21 ("Mem.")), accompanied by a second declaration from Deportation Officer Kyrious Dookharan, (Doc. 22 ("Dookharan Decl.")). In its opposition to the Amended Petition, the Government continues to rely on its initial response, which attaches twelve exhibits: an I-213 record of inadmissible alien dated August 2, 2016, (Doc. 7-1); a rap sheet for Petitioner in Minnesota, (Doc. 7-2); an FBI criminal history record, (Doc. 7-3); an August 2, 2016 I-200 arrest warrant for petitioner, (Doc. 7-4); an I-862 Notice to Appear from August 2, 2016, (Doc. 7-5); an I-286 notice of custody determination from August 2, 2016, (Doc. 7-6); a USCIS waiver of admissibility from August 30, 2018, (Doc. 7-7); an Order of Release on Recognizance ("OREC") as to Petitioner from September 2, 2016, (Doc. 7-8); a July 28, 2025 Immigration Detainer as to

Petitioner, (Doc. 7-9); an I-213 August 3, 2026 record of inadmissible alien as to Petitioner, (Doc. 7-10); a memorandum of OREC cancellation from August 3, 2026, (Doc. 7-11); and an I-200 warrant for the arrest of Petitioner from August 3, 2026, (Doc. 7-12). On September 23, 2026, Petitioner filed his reply. (Doc. 23 ("Reply").) On September 25, 2026, I held an order to show cause hearing and requested supplemental briefing. (Doc. 24.) On September 28, 2026, the parties filed their supplemental briefing. (Docs. 25–26.)

## II. Legal Standard

Gibson brings his Amended Petition pursuant to 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-04189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## III. Discussion

### A. *Jurisdiction to Challenge Petitioner's Detention*

The Government argues that I lack jurisdiction to decide Gibson's habeas challenge. (*See* Opp'n 13–14 ("As a threshold matter, this Court lacks subject matter jurisdiction over this

claim.").) This argument is misplaced. The Government's assertion is grounded on the Second Circuit's ruling in *Mahdawi v. Trump*, in which the court reversed the grant of a "habeas petition alleg[ing] that [Petitioner] was targeted for *removal*—not just detention—based on First Amendment protected activity." 183 F.4th 103, 118 (2d Cir. 2026) (emphasis in original). That is not the case here. Petitioner brings no challenge to the initiation of removal proceedings based on Petitioner's lack of lawful status, which have been ongoing since 2016. (*See* Am. Pet. ¶¶ 2, 20.) Petitioner challenges only his 2026 detention based on the revocation of the OREC issued to Petitioner, which is severable from any claims regarding his detention. (*See* Reply 5 ("[U]nlike Mr. Gibson, the petitioner in *Mahdawi* did not challenge improper OREC revocation, impermissible re-detention, the length of his confinement, or other similar claims that fall beyond § 1252(b)(9)'s reach."); *see also Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025) (explaining that an exercise of jurisdiction over a habeas claim is appropriate where petitioner's "unlawful detention claims may be resolved without affecting pending removal proceedings.").)

Therefore, I have jurisdiction to decide the Amended Petition.

### B. *Petitioner Cannot Be Detained Under Section 1226(c)(1)(E)*

The Government's initial opposition to the Petition indicated that Petitioner was detained under "8 U.S.C. § 1226(c)(1)(ii)." (Doc. 9 at 7; Doc. 8 ¶ 38.) As Gibson points out in his reply, no such statute exists and such a reference may be a typographical error intended as a reference to 8 U.S.C. § 1226(c)(1)(E)(ii), since 8 U.S.C. § 1226(c)(1)(E) is the only subsection of 8 U.S.C. § 1226(c)(1) that contains two subparts. (Reply 2 n.1.) In its opposition to the Amended Petition, the Government appears to concede that Petitioner is not detained under 8 U.S.C. 1226(c)(1)(E)(ii). (Opp'n 12 ("In Count One, Petitioner asserts that 8 U.S.C. § 1226(c)(1)(E)(ii) does not apply to Petitioner because he was lawfully admitted to the United States, and he did

not commit a misrepresentation. However, Petitioner is detained pursuant to 8 U.S.C. § 1226(c)(1)(B).” (internal citations omitted).)

Section 1226(c)(1)(E) requires mandatory detention where an individual “is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.” 8 U.S.C. § 1226(c)(1)(E). 8 U.S.C.A. § 1182(a)(6)(A) provides that “[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.” 8 U.S.C.A. § 1182(a)(6)(C) states that “[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.” Finally, 8 U.S.C. § 1182(a)(7) dictates that an immigrant “who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General” is inadmissible.

“[T]he inadmissibility provisions in § 1226(c)(1)(E)(i) plainly do not apply to Mr. Gibson,” who lawfully entered the United States in 2003 as a refugee and was only made inadmissible due to certain crimes he committed in Minnesota between 2009 and 2016. (Am Pet. ¶ 51 (citing *Salgado v. Francis*, No. 25-CV-6524, 2025 WL 2806757, at *5 (S.D.N.Y. Oct. 1, 2025)); *see also Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 498 (S.D.N.Y. 2025) (“The

Laken Riley Act accordingly mandates detention for noncitizens who enter the United States illegally, are released pending removal, and admit to committing" certain crimes).) The Government does not dispute this point. (*But see* Opp'n *passim*.)

Therefore, Petitioner cannot be detained under Section 1226(c)(1)(E).

### C. *Petitioner Cannot Be Detained Under Section 1226(c)(1)(A)*

The Government had also previously indicated that Petitioner had been or was detained under Section 1226(c)(1)(A). (*See* Doc. 8 ¶ 14; Doc. 9 at 3.) The Government now asserts that "Deportation Officer Kyrios Dookharan misstated ICE's detention authority in his first declaration." (Opp'n 12 n.6.) In any event, Petitioner cannot be detained under Section 1226(c)(1)(A) when the Government has already waived the underlying crimes of moral turpitude that would serve as a predicate to such a detention. Section 1226(c)(1)(A) provides that an individual may be subject to mandatory detention when they are "inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." 8 U.S.C. § 1226(c)(1)(A). Section 1182(a)(2) states that individuals convicted of or admit committing "a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime," are inadmissible. 8 U.S.C. § 1182(a)(2)(A)(i). However, the statute also provides for the waiver of subsection 1182(a)(2)(A)(i) if "in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States . . . it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien." 8 U.S.C. § 1182(h)(1)(B). On August 30, 2016, USCIS granted Petitioner such a waiver of inadmissibility. (Doc. 7-7.) Thus, Petitioner is not "inadmissible"

within the meaning of Section 1182(a)(2)(A). There is no argument put forward by the Government that the waiver of inadmissibility is invalid or inoperative. (*But see* Opp'n *passim*.)

Therefore, Petitioner cannot be detained under Section 1126(c)(1)(A).

**D. *Petitioner Cannot Be Detained Under Section 1226(c)(1)(B)***

In its opposition to the Amended Petition, the Government now argues that Petitioner is being detained under Section 1226(c)(1)(B), which requires that an individual be mandatorily detained when they are "deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1)(B). In response, Petitioner claims that I should decline to accept this post hoc rationalization for his detention only levied in after Petitioner had retained counsel in this litigation. (Reply 2–3.) Setting aside the procedural impropriety of the shifting allegations regarding which statute Petitioner is being detained under, the claim that Petitioner, who had a waiver of inadmissibility approved while he had an application for adjustment of status pending, may be deemed "deportable" rather than "inadmissible," fails as a matter of statutory interpretation and contravenes Second Circuit precedent.

The Government's reading of § 1226(c)(1)(A) and § 1226(c)(1)(B) effectively treats the two provisions interchangeably, with both applying to individuals who committed crimes of moral turpitude, but with only the former having an applicable waiver position. (*See* Opp'n 2 (Petitioner's "waiver only operates to permit adjustment of status, not to remove ICE's authority to detain him pending his removal proceedings.").) In its supplemental briefing, the Government asserts that Petitioner's waiver "serves to waive the applicable grounds of inadmissibility" but not "the deportability grounds of Section 1227(a)(2)(A)(ii)." (Doc. 26 at 2–3.) In other words, even though the waiver of inadmissibility precludes detention under § 1226(c)(1)(A), the

Government claims it does not preclude detention under § 1226(c)(1)(B). This argument proves too much because if the Government could merely re-detain individuals who were granted waivers of inadmissibility on the grounds that the waiver of inadmissibility did not waive deportability grounds, it would be tantamount to rendering those waivers granted by USCIS without any meaning.

The Government does not contest whether Petitioner was properly granted a waiver of inadmissibility in 2016; rather, the Government only argues what the proper effect of that waiver is on Petitioner's detention and the relevant statute of detention. (*See* Doc. 26 *passim*.) In general, legal permanent residents ("LPRs") such as Petitioner who are convicted of crimes of moral turpitude are not eligible for waivers of inadmissibility. *See Jankowski-Burczyk v. I.N.S.,* 291 F.3d 172, 178–80 (2d Cir. 2002) (discussing the "1996 amendment eliminating the eligibility of LPR aggravated felons for § 212(h) relief"). However, "with an adjustment application, the criminal alien *in* the United States steps into the shoes of one at the border seeking admission *to* the United States," for the purposes of adjudicating eligibility for a waiver. *Seepersad v. Sessions*, 892 F.3d 121, 124 (2d Cir. 2018) (emphasis in original)). "[B]oth LPRs and non-LPRs who are already present in the United States are able to apply for an adjustment of status under 8 U.S.C. § 1255; upon application," an individual becomes eligible for a waiver of inadmissibility. *Jankowski-Burczyk*, 291 F.3d at 175 n.2 (internal quotation marks omitted) (citing *In Re Mendez-Moralez*, 21 I. & N. Dec. 296, 299 (BIA 1996) (finding that individual who was a lawful permanent resident who had committed a crime of moral turpitude was nonetheless "eligible for section 212(h) relief" because of application for an adjustment of status)); *see also Matter of D-K*, 25 I & N. Dec. 761, 768 (BIA 2012) ("[O]ur construction effectively envisions that a refugee who ultimately becomes a lawful permanent resident will have been admitted twice--first, upon

conditional admission under section 207 of the Act, and second, upon reinspection and adjustment to permanent resident status under section 209(a) of the Act.") (internal quotation marks omitted).

The Second Circuit has made clear that, although "§ 212(h) provides for a waiver of inadmissibility only; [] by a quirk elsewhere in the INA, § 212(h) in effect allows for a waiver of deportability as well." *Jankowski-Burczyk*, 291 F.3d at 175. Individuals who are "seeking readmission" or effectively "seeking readmission" for waiver purposes through an application for adjustment of status, like Petitioner, are eligible for a waiver of inadmissibility, which permits the Attorney General to exercise his discretion, as he did here, to waive "specified grounds of inadmissibility" such as crimes of moral turpitude. *Seepersad*, 892 F.3d at 124. In other words, although an immigrant "is ineligible for a stand-alone waiver when 'he had been admitted to the United States as a legal permanent resident in 2006 and was ordered removed under a deportability provision,'" *Ascencio-Contreras v. Rosen*, 842 F. App'x 659, 664 (2d Cir. 2021) (quoting 8 U.S.C. § 1227(a)(2)(A)(i)), when an immigrant has pending applications for adjustment of status, as Petitioner does here, then "§ 212(h) of the Act permits the Attorney General to waive certain criminal grounds of inadmissibility if (among other things)," *Kilic v. Barr*, 965 F.3d 469, 472 (6th Cir. 2020) ("Immigration law draws a distinction between grounds of inadmissibility and grounds of deportability," and "to benefit from a § 212(h) waiver, a deportable alien must" file an application so as to "assimilate to the position" of the latter.) (internal quotation marks omitted).

Here, it is undisputed that Petitioner has two applications for permanent residency pending. (*See* Am. Pet. ¶¶ 21, 27, 31.) Therefore, Petitioner was properly granted a waiver of inadmissibility pursuant to § 212(h), which served to waive his grounds of deportability as well

as his grounds of inadmissibility. Therefore, Petitioner may not be detained under Section 1226(c)(1)(B).

### E. *Petitioner Was Detained Under Section 1226(a) Without an Individualized Custodial Determination*

The Government also claims that Petitioner may be detained for violating the terms of his order of release on recognizance, which required that he not "commit any crimes." (Doc. 7-8.) The Government appears to argue that misdemeanor offenses of which Petitioner was charged but not convicted of in 2025 justifies his detention. However, to the extent that the Government intends to detain Petitioner on this basis, numerous courts in this District have ruled that any such detention for violation of an OREC requires an individualized custodial determination and that failure to do so warrants habeas relief. For example, in *Hanson v. Joyce*, Judge Jennifer L. Rochon granted habeas to a Petitioner who "while on release under the OREC . . . was arrested on suspicion of shoplifting." No. 26-CV-03326, 2026 WL 2058445, at *1 (S.D.N.Y. July 16, 2026). After the charges were dropped, the Government maintained that the Petitioner was still subject to mandatory detention, although there under the auspices of Section 1225, rather than Section 1226(c)(1)(B). *Id.* at *2 ("Petitioner argues, and Respondents concede, that Section 1226(c) is no longer a valid basis for Petitioner's detention given that the charges against her have been dismissed."). But the court held that Section 1225, which requires mandatory detention for "arriving" noncitizens, was not applicable to Petitioner, who was "already present in the United States because ICE released [her] on [her] own recognizance." *Id.* at 4–5; *see also Barbosa da Cunha v. Freden*, 175 F.4th 61, 99 (2d Cir. 2026) (Cabranes, J., concurring) ("When Congress enacted § 1225(b)(2) in 1996, it said that the provision would concern arriving aliens, not those inland like Petitioner. . . . If Respondent is right that in 1996 Congress ordered the largest mass detention in American history, the world would have likely noticed sooner."). "As a

result, [Petitioner wa]s subject only to discretionary detention under § 1226(a)," for which she received no individualized determination. *Hanson*, 2026 WL 2058445, at *5 (internal quotation marks omitted). The same is true here; the Government failed to provide Gibson with the process he was due prior to detention in the form of an individualized custodial determination and release was the appropriate relief. *See id.; see also Tumba v. Francis*, 813 F. Supp. 3d 394, 404 (S.D.N.Y. 2025) (Section 1226(a) "still requires that such discretion actually be exercised—i.e., that some determination actually be made."); *Yao v. Almodovar*, 813 F. Supp. 3d 461, 476 (S.D.N.Y. 2025) ("procedural protections" such as individualized custodial determination "matter" and "[t]hey are not mere technicalities.); *Silva Rueda v. Catletti*, 26-CV-2977, 2026 WL 1194956, at *4 (S.D.N.Y. May 1, 2026) (similar).

Therefore, the Government violated Petitioner's due process rights by failing to provide him with an individualized custodial determination in advance of his detention. Habeas relief is thus appropriate.

**F. *Exhaustion***

The Government also argues that Petitioner failed to exhaust his remedies in immigration court including seeking a *Joseph* hearing to interrogate the basis for detention. (Opp'n 14–16.) However, "exhaustion is not a statutory requirement" for a habeas petition. *Maldonado v. Lloyd*, No. 18-CV-3089, 2018 WL 2089348, at *5 (S.D.N.Y. May 4, 2018). In other words, a *Joseph* hearing is not a statutory requirement. Indeed, "[t]here is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention." *Rivera Esperanza v. Francis*, No. 25-CV-8727, 2025 WL 3513983, at *8 (S.D.N.Y. Dec. 8, 2025); (quoting *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014)). A court may excuse a failure to exhaust when, among other reasons, "irreparable injury may occur

without immediate judicial relief," or "in certain instances a plaintiff has raised a substantial constitutional question." *Id.* (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), *as amended* (July 24, 2003)). Courts have "broad discretion in conditioning a judgment granting habeas relief." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

Where "continued detention under § 1226(a) without DHS first making an individualized determination constitutes a violation of [a petitioner's] due process rights," exhaustion is not required, as "[n]either an immigration judge nor the BIA has jurisdiction to adjudicate constitutional issues." *Sidqui v. Almodovar*, 823 F. Supp. 3d 364, 396 (S.D.N.Y. 2026) (quoting *Villegas ex rel. Guzman Andujar v. Francis*, No. 25-CV-9199, 815 F.Supp.3d 248, 264 (S.D.N.Y. Nov. 18, 2025)).

I find that, in this case, a *Joseph* hearing is not necessary, as the Government has clearly detained Petitioner under Section 1226(a) without first making an individualized custodial determination, violating Petitioner's due process rights *see supra* §§ III.B–E, and, thus, the writ should issue.

### G. *Remedy*

The only remaining question is the proper remedy for Gibson. Petitioner argues that his immediate release is proper, or in the alternative, a constitutionally adequate bond hearing. (Am. Pet. 81–82.) A noncitizen detained pursuant to § 1226(a), as I have found Gibson to be, *see supra* §§ III.B–E, is entitled to an individualized bond hearing at the outset of detention to assess risk of flight and danger. *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive a bond hearing at the outset of detention."). Providing a bond hearing now, more than a month later, does not "retrospectively cure the . . . violation, which derived from Petitioner's unlawful arrest and detention without the statutorily

required exercise of discretion." *See Ahmadi v. Almodovar*, No. 26-CV-274, 2026 WL 621827, at *3 (S.D.N.Y. Mar. 5, 2026) (quoting *Yao*, 2025 WL 3653443, at *11); *see also Ambroladze v. Maldonado*, 26-CV-00474, 2026 WL 280182, at *3 (E.D.N.Y. Feb. 3, 2026) ("[B]ecause the 'typical remedy' for 'unlawful executive detention' is 'of course, release,' the government's ongoing detention of Petitioner, in the face of yet another complete failure of process, entitles him to immediate release." (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008))). "[T]he harm began when Petitioner was detained without process and continues with each day he remains in custody." *Han v. Noem*, No. 25-CV-10753, 2026 WL 322963, at *8 (S.D.N.Y. Feb. 6, 2026). Thus, Respondents must release Gibson from detention.

Having determined that Petitioner's procedural due process rights were violated, and that he is entitled to a writ of habeas corpus on that basis alone, I need not address the remaining arguments in his Amended Petition.

## IV. <u>Conclusion</u>

For the reasons stated above, the Amended Petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED and the Government is ordered to immediately release Petitioner from custody. The Government is directed to inform counsel for Petitioner as to the expected time and place of Petitioner's release and shall file a status letter to update me about Petitioner's status by October 27, 2026.

IT IS FURTHER ORDERED that Petitioner "shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a)." *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 495 (E.D.N.Y. 2025); *Cf. Rueda Torres v. Francis*, No. 25-CV-8408, 2025 WL 3168759, at *6.

IT IS FURTHER ORDERED that the Government is ENJOINED from denying bond to Petitioner in any subsequent proceeding on the basis that he must be detained pursuant to: (1) 8 U.S.C. § 1225(b) or (2) 8 U.S.C. § 1226(c) absent a change in relevant circumstances consistent with this Opinion & Order.

IT IS FURTHER ORDERED that, if Petitioner is granted bond, the Government is ENJOINED from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2). *Rueda Torres*, 2025 WL 3168759, at *6.

SO ORDERED.

Dated: October 20, 2026
New York, New York

Vernon S. Broderick
United States District Judge